IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JUSTIN ERSKINE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. No. 14-1468-SLR |
| | ) | |
| DAVID PIERCE, Warden, and | ) | |
| ATTORNEY GENERAL OF | ) | |
| THE STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

John P. Deckers.  Counsel for petitioner.

Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for respondents.

**MEMORANDUM OPINION**

December 𝓗 , 2016
Wilmington, Delaware

ROBINSON, District Judge

## I.    INTRODUCTION

Petitioner Justin Erskine ("petitioner") filed a pro se application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (D.I. 1), and then filed two counseled amended applications for a writ of habeas corpus ("application").  (D.I. 9; D.I. 15)  For the reasons that follow, the court will dismiss petitioner's § 2254 application as time-barred by the one-year period of limitations prescribed in 28 U.S.C. § 2244(d)(1).

## II.    BACKGROUND

The facts leading up to petitioner's arrest and conviction are as follows:

On June 5, 2006, it rained.  The bad weather gave [petitioner] and his coworker, David Hamilton, a day off from their landscaping jobs.  They stared drinking, and were planning on driving to Baltimore, but first they stopped at Matt Minker's house.  Minker was Hamilton's friend, and Minker wanted Hamilton to get him some percocet pills.  Hamilton had a few connections, but he did not find anyone who had the pills.  Nonetheless, Minker gave Hamilton $300 and asked him to get percocet if he could.

As [petitioner] and Hamilton drove out of Minker's neighborhood, Hamilton saw two drug dealers – Trevor Moncrief and Raymond Ward. They told Hamilton that they could get the percocet, but that they would have to drive to the source. Hamilton, who was driving, told the two men to get in the back seat.  The four men drove around for several hours without finding any drugs.  Hamilton eventually dropped the dealers off at their house and returned to Minker's house. At Minker's house, Hamilton and [petitioner] continued to drink for several hours. At some point, Hamilton went out to his truck to get something, and he saw Moncrief and Ward standing there.  They told Hamilton that they had another connection who could get the percocet.

After Hamilton confirmed that Minker still wanted the drugs, he and [petitioner] again started driving around with Moncrief and Ward.  At their first stop, Moncrief and Ward spoke to some people and came back with a price that Hamilton found unsatisfactory.  While Hamilton was discussing the price, approximately 12 people surrounded the truck, and Hamilton heard someone suggest that they would rob him.  Hamilton decided to leave, and Moncrief and Ward returned to the back seat of the truck.  They drove to another location, where Hamilton was able to buy 3 percocet pills from one of Ward's relatives.

The four men were still driving around when Hamilton's friend, Jesus Aviles, called to say that he was bored. Hamilton told Aviles what had happened at their first stop, and Aviles insisted that Hamilton pick him up. Aviles got in the passenger side of the front seat, next to [petitioner]. Aviles noticed Minker's shotgun, which was next to Hamilton, and asked to see it. While the five men were driving on a back road, they started to argue about whether Moncrief and Ward had set up Hamilton and [petitioner]. Aviles suddenly turned and shot Ward in the face. Then he shot Moncrief in the side of his head.

After the shooting, Aviles "freaked out" and demanded that Hamilton take him home. He told Hamilton to "take care of the evidence" and warned both men that he knew where they and their families lived. Hamilton and [petitioner] drove to Hamilton's sister's house to consult with her boyfriend, Raymond Gleaser. Hamilton explained that Moncrief and Ward tried to rob him, and that he shot them in self defense. He also commented, in a threatening manner, that there were more shells in the shotgun.

Hamilton and Gleaser decided to bury the bodies in the woods behind Gleaser's mother's house in Maryland. While Hamilton, Gleaser and [petitioner] were standing by the truck, getting ready to leave, Hamilton heard a noise and discovered that Moncrief was still breathing. [Petitioner] handed Hamilton his butterfly knife and told Hamilton to finish killing Moncrief. Hamilton cut Moncrief's throat, but Moncrief did not die. Justin then told Hamilton to stab Moncrief in the lung. Hamilton did so, and Moncrief died shortly thereafter. The three men then drove to Maryland, dug graves and buried the bodies.

Gleaser returned to his house, and Hamilton and [petitioner] returned to Minker's house. Hamilton gave Minker back his shotgun and told him to clean it. [Petitioner] got fresh clothes at Minker's house, while Hamilton drove off in the bloody truck. The police took Hamilton into custody later that day, and Hamilton continued to tell the self defense story. [Petitioner's] first statement to the police, likewise, made no mention of Aviles. Seven months later, after [petitioner] knew that Hamilton had told his attorneys about Aviles, [petitioner] went to the police and identified Aviles as the shooter. [Petitioner] and Aviles were arrested shortly thereafter.

[Petitioner] was charged with first degree murder, possession of a deadly weapon during the commission of a felony, tampering with physical evidence, and two counts of conspiracy. He refused several plea offers and relied on the defense of duress. Dr. Stephen Mechanick opined that [petitioner] was traumatized by the shootings and that he was afraid for his own life. In his report, Mechanick reviewed all of the witness's statements, including [petitioner's]. Mechanick explained that [petitioner] did not want Moncrief to be killed, he "just wanted to be out of the nightmare." Mechanick's report concluded that

2

> [petitioner's] conduct was "substantially influenced by the explicit threats and
> duress that he experienced from Mr. Hamilton, and . . . by his fear of being
> harmed or killed by Mr. Aviles and Mr. Hamilton." Notwithstanding Mechanick's
> opinion, the jury found [petitioner] guilty as charged.

*Erskine v. State*, 4 A.3d 391, 392-94 (Del. Super. Feb. 26, 2014).

Petitioner was arrested on March 21, 2007, and subsequently was indicted on charges of first degree murder, possession of a deadly weapon during the commission of a felony ("PDWDCF"), first degree conspiracy, second degree conspiracy, and tampering with physical evidence. (D.I. 17 at 3) In October 2008, a Delaware Superior Court jury convicted petitioner of all charges. He filed a motion for new trial on February 9, 2009, which the Superior Court denied on June 22, 2009. On that same day, the Superior Court sentenced him to an aggregate non-suspended term of life, plus five years of imprisonment. Petitioner appealed, and the Delaware Supreme Court affirmed his convictions and sentence on June 24, 2010. *See Erskine*, 4 A.3d at 396.

Represented by counsel, petitioner filed his first motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on May 25, 2011. Post-conviction counsel moved to withdraw from representing petitioner on September 24, 2012, and the Superior Court denied the Rule 61 motion on November 20, 2012. (D.I. 17 at 4) The Delaware Supreme Court affirmed that decision on May 7, 2013. *See Erskine v. State*, 65 A.3d 616 (Table), 2013 WL 1919121 (Del. May 7, 2013).

Acting pro se, petitioner filed his second Rule 61 motion on May 20, 2013, which the Superior Court denied on March 31, 2014. (D.I. 17 at 4) The Delaware Supreme

Court affirmed that decision on August 21, 2014. *See Erskine v. State*, 100 A.3d 1021 (Table), 2014 WL 4179118 (Del. Aug. 21, 2014).

Thereafter, petitioner filed in this court the instant pending application for habeas relief. The State filed an answer, asserting that the application should be denied in its entirety as time-barred or, alternatively, because the claims are procedurally barred or meritless. (D.I. 17)

## III.   ONE-YEAR STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law by the President on April 23, 1996, and it prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners.  28 U.S.C. § 2244(d)(1).  The one-year limitations period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  AEDPA's limitations period is subject to statutory and equitable tolling.  *See Holland v. Florida*, 560 U.S. 631 (2010)(equitable tolling);  28 U.S.C. § 2244(d)(2)(statutory tolling).

4

Petitioner's application, which is dated December 2014, is subject to the one-year limitations period contained in § 2244(d)(1).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  Petitioner does not assert, and the court does not discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D).  Thus, the one-year period of limitations in this case began to run when petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a petitioner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final ninety days after the state appellate court's decision.  *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).  In this case, the Delaware Supreme Court affirmed petitioner's convictions on June 24, 2010, and he did not seek certiorari review of that decision.  Therefore, his judgment of conviction became final on September 22, 2010.  *See* Del. Supr. Ct. R. 6(a)(iii)(establishing a thirty-day appeal period).  Applying one year to that date, petitioner had until September 22, 2011 to timely file his petition.  *See Wilson v. Beard*, 426 F.3d 653, 662-64 (3d Cir. 2005)(Fed. R. Civ. P. 6(a) applies to AEDPA's limitations period); *Phlipot v. Wilson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2105)(AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the date it began to run).

5

Petitioner did not file the instant application until December 2, 2014,[1] a little more than three full years after the expiration of the limitations period. Therefore, his habeas application is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled. The court will discuss each doctrine in turn.

## A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 424-25 (3d Cir. 2000); *Price v. Taylor*, 2002 WL 31107363, at *2 (D. Del. Sept. 23, 2002). Notably, a state post-conviction motion that is rejected by a state court as untimely is not "properly filed" for § 2244(d)(2) purposes. *See Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005). Additionally, a matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002).

When petitioner filed his first Rule 61 motion in the Delaware Superior Court on May 25, 2011, 244 days of the limitations period had already expired. The Rule 61 motion tolled the limitations period from May 25, 2011 through May 7, 2013, the date on

---

[1]Pursuant to the prison mailbox rule, a pro se prisoner's habeas application is deemed filed on the date he delivers it to prison officials for mailing to the district court, not on the date the application is filed in the court. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003); *Woods v. Kearney*, 215 F. Supp. 2d 458, 460 (D. Del. 2002)(date on petition is presumptive date of mailing and, thus, of filing). Applying this rule to the instant case, the court adopts December 2, 2014, as the date of filing because that is the date petitioner signed the application.

which the Delaware Supreme Court affirmed the Superior Court's denial of petitioner's

Rule 61 motion. *See Erskine*, 2013 WL 1919121. The limitations clock started to run

again on May 8, 2013, and ran the remaining 121 days without interruption until the

limitations period expired on September 9, 2013.[2] Therefore, even with the applicable

statutory tolling, the application is time-barred, unless equitable tolling is available.

### B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare

circumstances when the petitioner demonstrates "(1) that he has been pursuing his

rights diligently, **and** (2) some extraordinary circumstance stood in his way and

prevented timely filing." *Holland*, 560 U.S. at 648-49 (emphasis added). With respect to

the diligence requirement, the burden is on the petitioner to prove that he has been

reasonably diligent in pursuing his rights;[3] equitable tolling is not available where the

late filing is due to the petitioner's excusable neglect. *Id.* at 651-52; *Miller v. New

Jersey State Dept. of Corr.*, 145 F.3d 616, 618-19 (3d Cir. 1998). A petitioner's

obligation to act diligently applies to both his filing of the federal habeas application and

to his filing of state post-conviction applications. *LaCava v. Kyler*, 398 F.3d 271, 277

(3d Cir. 2005). In turn, the Third Circuit has explained that extraordinary circumstances

for equitable tolling purposes may be found where:

---

[2]Contrary to petitioner's assertion (D.I. 21 at 8-10), the second Rule 61 motion petitioner
filed on May 20, 2013 has no statutory tolling effect because the Delaware Supreme
Court held that the Rule 61 motion was time-barred under Rule 61(i)(1). In other words,
the second Rule 61 motion was not "properly filed" for statutory tolling purposes. *See
Pace*, 544 U.S. at 417 (2005)("Because the state court rejected petitioner's PCRA
petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling
under § 2244(d)(2).").

[3]*See Urcinoli v. Cathel*, 546 F.3d 269, 277 (3d Cir. 2008).

(1) the defendant actively misled the plaintiff;
(2) the plaintiff was in some extraordinary way prevented from asserting his rights; or
(3) the plaintiff timely asserted his rights mistakenly in the wrong forum.

*See Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001).

In this case, the Superior Court denied petitioner's second Rule 61 motion because it was not submitted on the proper form and because it was filed while petitioner's first post-conviction appeal was still pending. (D.I. 21-7 at 1)  However, the Delaware Supreme Court did not affirm the Superior Court's decision on the basis of these two reasons.  Rather, the Delaware Supreme Court explicitly explained that its affirmance was due to the fact that the second Rule 61 motion was time-barred under Rule 61(i)(1) and because it was also barred as repetitive under Rule 61(i)(2).  *See Erskine*, 2014 WL 4179118, at *1.

Petitioner contends that equitable tolling is warranted because, when he filed his second Rule 61 motion on March 20, 2013, there were still 122 days remaining in AEDPA's limitations period, and the Superior Court's April 30, 2013 decision failed to mention anything "about timeliness even though it [the second Rule 61 motion] was clearly untimely under Rule 61(i)(1)." (D.I. 21 at 14)  According to petitioner, the Superior Court's act of dismissing his second Rule 61 without mentioning timeliness "was sufficiently misleading as to constitute an extraordinary circumstance." *Id.*  This argument is unavailing.  The fact that the Superior Court did not mention the timeliness of the second Rule 61 motion does not constitute an extraordinary circumstance, because petitioner has failed to demonstrate how the Superior Court's "omission" actually prevented him from filing a habeas application in federal court.  At a minimum,

8

petitioner could have filed a "protective" habeas application in order to preserve his federal remedies in this court while proceeding with his second Rule 61 motion in the Delaware courts. *See Allen v. Morgan*, 40 F. Supp. 3d 404, 409 n.4 (D. Del. 2014).

Finally, to the extent petitioner's late filing was the result of his lack of legal knowledge or his miscalculation of the one-year filing period, such mistakes do not justify equitably tolling the limitations period. *See Taylor v. Carroll*, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004). For all of these reasons, the court concludes that the doctrine of equitable tolling is not available to petitioner on the facts he has presented. Accordingly, the court will dismiss the instant application as time-barred.[4]

## IV.  CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 application, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

If a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a

---

[4]Having determined that the application is time-barred, the court will not address the State's alternative reason for denying the application.

9

constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack*, 529 U.S. at 484.

The court has concluded that petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 should be dismissed as time-barred. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## V.    CONCLUSION

For the reasons stated, petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.